## THE WILLIAM H. TAYLOR.

### THE P. R. R. NO. 32.

(Circuit Court of Appeals, Second Circuit. March 13, 1911.)

#### Nos. 211, 212.

COLLISION (§ 61*)—TUGS AND TOWS MEETING—FAILURE TO COMPLY WITH PASSING AGREEMENT.

A finding of the trial court affirmed that a collision between the tows of the tugs Taylor and P. R. R. No. 32, meeting in Arthur Kill, was due solely to the fault of No. 32 in failing to comply with an agreement to pass starboard to starboard, which was proper under the special circumstances.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 78; Dec. Dig. § 61.*

Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

Appeals from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by Isaac E. Ewing and by John Newman against the steam tugs William H. Taylor, the Taylor Dredging Company, claimant, and the P. R. R. No. 32, the Pennsylvania Railroad Company, claimant. Decree (174 Fed. 727) against the No. 32 alone, and her claimant appeals. Affirmed.

This cause comes here upon appeal from decrees of the District Court holding the tug P. R. R. No. 32 solely responsible for damages resulting from the collision of libelant's coal barges with the tow of the tug William H. Taylor. The collision happened in Arthur Kill, near the Baltimore & Ohio Railroad bridge.

Burlingham, Montgomery & Beecher (W. S. Montgomery and Roderick Terry, Jr., of counsel), for appellant.

Carpenter & Park (J. E. Carpenter, of counsel), for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

PER CURIAM. Appellants concede that the evidence as to the exact place of collision is "very conflicting," as indeed it was; some

of the witnesses stating that No. 32 was kicking up the mud on the Staten Island shore, and others stating that the Taylor's tow was doing the same thing on the New Jersey shore; the channel being about 300 feet wide. All of the witnesses were examined in the presence of the District Judge. He found that the collision happened "about opposite Morse creek," a finding which is apparently not challenged. He also found that the Taylor was navigated as far as possible to the New Jersey side of the channel, but that the tow of No. 32, under the action of the wind, swung over into the waters in which the Taylor was navigating. This is substantially a finding that the collision happened well over towards the New Jersey shore. Upon the testimony as it stands, especially that of the disinterested witnesses from the dredge, we certainly cannot disturb these findings.

If the collision took place where these findings locate it, the fault of No. 32 is clear, because the collision occurred some 1,500 feet below the bridge, and the obstruction to her hauling over towards the Staten Island shore, which was interposed by the anchored dredge, terminated certainly not more than 800, and probably 600, feet below the bridge. Had she changed direction under a hard-a-starboard helm as soon as she cleared the dredge, her tow would not have reached the place where the collision happened; she had space and time enough to keep clear of the waters in which the Taylor was navigating.

We are satisfied that the position of the dredge and scow was such as to constitute a special circumstance which warranted the Taylor in proposing to pass starboard to starboard.

The decrees are affirmed, with interest and costs.